[Civ. No. 31388. Second Dist., Div. One. May 22, 1967.]

COUNTY OF VENTURA, Plaintiff and Respondent, v. CHANNEL ISLANDS STATE BANK, Defendant and Appellant.

William T. Selby and Ralph G. Hagermann for Defendant and Appellant.

Herbert L. Ashby, County Counsel, and Jack A. Butt, Assistant County Counsel, for Plaintiff and Respondent.

LILLIE, J.—The County of Ventura sued Channel Islands State Bank to recover $60.14 in property taxes and penalties levied on its sign and night depository assessed to it for the fiscal year 1963-64. Defendant appeals from judgment for plaintiff.

In January 1963, pursuant to the terms of a five-year lease defendant moved into the ground floor of a building located in the City of Ventura. These quarters were designed and constructed in 1925 for banking business operations; since that time banks have been the only permanent occupants. The lease, among other things, gives defendant the right to install upon and remove from the premises various items of personal property and fixtures. (Par. Ninth.)

Prior to the first Monday in March 1963, defendant installed on the bank premises a sign approximately 28 feet high, 2½ to 3 feet wide and 12 to 16 inches thick, consisting in part of a metal framework and plastic inserts and connected at an angle to, and upon the front and side walls on the corner of, the outside of the building. The bottom of the sign, approximately 12 feet off the ground, is supported by pieces of angle iron attached with 8 bolts to the side walls of the building. Illuminated, the sign is electrically connected into the building; on it appear the words "Channel Islands State Bank." The main purpose of the sign is to advertise defendant's banking business, and is similar to signs used by other banks.

Also, prior to the first Monday in March 1963, defendant installed on the bank premises a night depository located on the outside of the building in the wall on the side facing the street. It has a 1-foot square metal plate cemented into the wall, surrounded on three sides by 10 inches of ceramic tile,

and bears "Day And Night Deposit"; it contains a letter-slot as well as a door which opens with a key. The plate is flush against the wall of the building at about shoulder level. On the inside of the bank the depository has a chute leading from the outside to a steel vault. At floor level there is a round combination lock steel vault door. The interior portion of the depository is located in a false pillar which gives the appearance of not being temporary. The night depository affords additional service to defendant's customers and is similar to those used by other banks.

Since their installation, the sign and night depository have remained unaltered. They are such as to require the service of two or more persons or a mechanical device to move them, and for the purpose of moving or making repairs specialists must be employed. They are likely to remain installed until worn out or replaced, unless the bank moves. Defendant's records indicate that the sign was purchased new for $4,000. The sign and night depository are shown in defendant's records of assets as its personal property. Neither the owner of the land on which the sign and night depository are located nor defendant filed with the assessor a written statement attesting to their separate ownership before March 4, 1963. In 1963 the articles were assessed to defendant on the unsecured roll; the assessor assigned to them an assessed value and plaintiff levied the tax.

Based upon a series of findings[1] the trial court concluded that "defendant's night depository and sign constituted real property in that they constituted improvements in that they constituted fixtures (being permanently annexed to the building in or upon which they were located)"; said improvements were assessed to a person not the assessee of the building or land upon which they are located; said tax, the

---

[1] On March 4, 1963, defendant Bank owned, claimed, possessed and controlled the night depository and sign; said property was affixed and annexed and physically attached by cement, plaster, bolts or screws to the building; the items were adapted to the use and purpose for which the realty was used; said property was permanently annexed to the building in or upon which they were located as determined by the physical factors or reasonably manifested outward appearances; on March 4, 1963, the night depository and sign were located in or upon a building and land belonging to a person other than defendant Bank; said property was assessed to defendant Bank who is a person other than the assessee of the building or the land upon which the property was located; and neither the owner of the land on which the property is located nor the owner of said property filed with the assessor a written statement before March 4, 1963, attesting to their separate ownership.

assessment thereof to defendant, the attempt to collect and the manner of collection thereof were, and each of them was, legal; and said property did not constitute personal property.

Appellant Bank argues variously that the sign and night depository are its personal property and as such, under article XIII, section 16, subdivision 1(a), California Constitution, cannot be assessed to it, *or* if the sign and night depository are leasehold improvements, thus realty, they belong not to it but to the owner of the land and the bank is not obligated to pay any tax thereon. In the course of its argument, appellant attacks the trial court's findings and conclusions as contrary to certain cited Civil Code sections and cases determining rights between landlord and tenant; and while it has not clearly defined the issue, we perceive appellant's position to be that where an owner of such property has annexed the same to land which belongs to another as to become part of that realty, and no statement has been filed showing a separation of interest in the real property, the leasehold improvements must be assessed and taxed to the owner of the land. This raises two questions— were the improvements installed by defendant on its bank premises real property for the purpose of taxation, and taxable as such; and if they were, to whom should the improvements have been assessed.

■ The evidence establishes and the trial court properly concluded that the sign and night depository were so annexed to the realty as to become fixtures classifiable as improvements to real property and constituting realty for the purpose of taxation (*Simms* v. *County of Los Angeles,* 35 Cal.2d 303, 309-310 [217 P.2d 936]) ; thus, the leasehold improvements were assessable and taxable as real property. (*Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385, 393 [175 P.2d 512].) ■ Further, the trial court found that the improvements, though constituting real property, were ''owned, claimed, possessed or controlled'' by defendant; this finding too is supported by the record. Defendant, not having by its answer controverted the allegation (Par. 4) in the third amended complaint that it was the owner of the sign and night depository, admitted the same to be true. (*City of Santa Barbara* v. *Eldred,* 108 Cal. 294, 300 [41 P. 410] ; Code Civ. Proc., § 462) However, if it can be said that its challenge to the legality of the tax assessed to it on these items raised an

issue of their ownership, the proof demonstrates that the property belongs to and is owned, claimed, possessed and controlled by the bank. First, defendant offered no evidence that it did not own the articles. ▮ In actions in which tax assessments are challenged as illegal, there is a presumption in favor of the validity of the assessment, and the burden of showing the contrary is on the one claiming to be aggrieved (*Western Union Tel. Co.* v. *Los Angeles*, 160 Cal. 124, 127 [116 P. 564]); thus, proof of the assessment[2] put on defendant the burden of showing that it was not the owner of the property. (*City of Santa Barbara* v. *Eldred*, 108 Cal. 294, 300 [41 P. 410].) Second, defendant's own records indicate that the sign was purchased new by it and belongs to the bank; defendant's records of assets show the sign and night depository to be its personal property; defendant's name "Channel Islands State Bank" appears on the sign; both items were installed by *it* and defendant has the right under its lease to remove them.

▮ The validity of the assessment on the leasehold improvements to defendant Bank is supported by the controlling sections of the Revenue and Taxation Code. Thereunder the assessor in his discretion was authorized to assess the sign and night depository on the unsecured roll to defendant. While section 2188.2, Revenue and Taxation Code, permits the filing of a written statement attesting to separate ownership whenever improvements are owned by a person other than the owner of the land on which they are located and requires the assessor to assess separate interests in real property to their separate owners if he receives such a statement, the statute does not prohibit him from separately assessing such interest if, as in the instant case, he receives none. Prior to 1947, the assessor, under sections 109, 134, 405 and 602 subdivision (g), Revenue and Taxation Code, was authorized to place separately owned improvements on the unsecured roll. By implication, this was recognized in 1946 in *Trabue Pittman Corp.* v. *County of Los Angeles*, 29 Cal.2d 385 [175 P.2d 512], "In some *other* jurisdictions all interests in or to real estate are

---

[2]Exhibit 3, certified copy of assessment roll, is prima facie evidence of plaintiff's right to recover (§ 3004, Rev. & Tax. Code); Exhibit 2, certified copy of abstract list of delinquent unsecured property is prima facie evidence of the assessment, the property assessed, the delinquency, the amount of taxes due and unpaid, and that there has been a compliance with all forms of law relating to assessment equalization and levy of taxes (Rev. & Tax. Code, § 2927.5).

taxable as real property in the name of the owner of the land." (Italics added; p. 402.) This appears to have been acknowledged by the Legislature in 1947 when sections 608 and 2188, and in 1961 when section 2188.1, Revenue and Taxation Code, were amended, which by their language contemplate assessment of lessee-owned improvements either to the owner of the land or separately to the lessee; and the obvious effect of section 2188.2, added in 1947, is but a limitation on the already existing authority of the assessor to assess separately owned improvements only when a written statement attesting to separate ownership has been filed. It in no manner prohibits the assessor in the exercise of his discretion from assessing on the unsecured roll the leasehold improvements to their owner, the Bank herein, simply because neither it nor the owner of the land elected to avail themselves of their right to file a written statement attesting to separate ownership under section 2188.2.

The trial court having found that on March 4, 1963, defendant owned, claimed, possessed and controlled the night depository and sign located on a building and upon land belonging to a person other than defendant and that neither the owner of the land nor defendant filed with the assessor a written statement attesting to their ownership, and having concluded that they "constituted real property in that they constituted improvements in that they constituted fixtures," the same were properly assessed to defendant Bank as "the [person] owning, claiming, possessing, or controlling" them. (Rev. & Tax. Code, § 405.) Banks pay to the State of California a special tax "which shall be in lieu of all other taxes . . . except taxes upon their real property. . . ." (Cal. Const., art. XIII, § 16, subd. 1.) Under section 104, Revenue and Taxation Code, " 'real property' includes: . . . (c) Improvements"; and " 'Improvements' includes: (a) All . . . fixtures . . . affixed to the land. . . ." (Rev. & Tax. Code, § 105.) No exception is made in the case of trade fixtures. (*Simms* v. *Los Angeles County,* 35 Cal.2d 303, 310 [217 P.2d 936].) The leasehold improvements (constituting real property), having been assessed to defendant who is the person other than the assessee of the building or of the land upon which they are located, were unsecured property and the taxes thereon were not a lien on the real property sufficient in the opinion of the assessor to secure the payment of the taxes (Rev. & Tax. Code, § 134 subd. (a) ; and in 1963, the sign and

night depository were assessed to defendant on the unsecured roll. (Rev. & Tax. Code, § 109.) The assessor assigned an assessed value to the property and plaintiff County levied a tax on the same at the unsecured tax rate for 1963, due and payable March 4, 1963 (Rev. & Tax. Code, §§ 2901, 2192) which became delinquent September 1, 1963 (Rev. & Tax. Code, § 2922). Every tax on improvements is a lien on the taxable land on which they are located if they are assessed to the same person to whom the land is assessed (Rev. & Tax. Code, § 2188), but every tax on improvements assessed to a person other than the assessee of the land on which they are located may become a lien on the real property of the owner of such improvements or be assessed on the unsecured roll. (Rev. & Tax. Code, § 2188.1.) Where delinquent taxes or assessments are not a lien on real property sufficient in the judgment of the assessor to secure the payment thereof, the county may sue in its own name for the recovery of the delinquent taxes or assessment with penalties and costs. (Rev. & Tax. Code, § 3003.)

In the face of the holding in *San Diego Trust & Sav. Bank* v. *San Diego,* 16 Cal.2d 142 [105 P.2d 94, 133 A.L.R. 416], *Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385 [175 P.2d 512], and *Simms* v. *County of Los Angeles,* 35 Cal.2d 303 [217 P.2d 936], the above cited sections of the Revenue and Taxation Code and the record before this court, appellant persists that the sign and night depository are not classifiable as real property, but if they are, they belong not to it but to the landlord. In effect, it reargues the issue decided in *San Diego Trust & Sav. Bank, Trabue, Simms* and *Pajaro Valley Bank* v. *County of Santa Cruz,* 207 Cal.App.2d 621 [24 Cal.Rptr. 639], by urging that in determining whether improvements are fixtures the assessor should not be allowed to act on the basis of outward appearances and ignore the lease agreement between the landlord and tenant. And for tax purposes, appellant seeks to define real property, fixtures and improvements and their ownership in the land owner by reference, not to the controlling sections of the Revenue and Taxation Code, but to sections 14, 657-660, 663, 1013 and 1019, Civil Code, and various California cases wherein the issue concerning the character of leasehold improvements was raised between landlord and tenant. ▪ While certain Civil Code sections are used in determining the rights to fixtures between a landlord and his tenant, those rules control-

ling a determination of whether trade fixtures are properly classifiable as improvements to realty, thus realty for purposes of taxation, are found in the cited sections of the Revenue and Taxation Code.

By their very language, sections 1013 and 1019, Civil Code, are not here applicable. Section 1013 in part provides: ''When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed . . . belongs to the owner of the land. . . .'' While the lease agreement between defendant and its landlord is not a part of the record on appeal, although included in the exhibit envelope, no one can dispute that thereunder defendant has the right to remove the sign and night depository from the premises. Too, it is established by the evidence that these items were affixed for the purpose of the banking trade and that their removal may be effected without substantial injury to the premises; thus, under section 1019, defendant may remove them. Section 660, Civil Code, defines fixtures as things permanently resting upon or attached to the land or building, but ''In order to make an article a permanent accession to the land its annexation need not be perpetual. It is sufficient if the article shall appear to be intended to remain where fastened until worn out, unless the purpose to which the realty is devoted has been accomplished or until the article is superseded by another article more suitable for the purpose.'' (*San Diego Trust & Sav. Bank* v. *San Diego*, 16 Cal.2d 142, 151 [105 P.2d 94, 133 A.L.R. 416] ; see also *Trabue Pittman Corp.* v. *County of Los Angeles*, 29 Cal.2d 385, 393 [175 P.2d 512].) While under the lease the sign and night depository may be removed by defendant, and the evidence shows that their removal requires the services of more than one person or some mechanical means and employment of specialists, both are the kind of property likely to remain installed until worn out or replaced unless the bank moves. ''To classify trade fixtures as real property is not to obliterate the distinction between fixtures and trade fixtures for all purposes, nor to introduce an innovation into the law of trade fixtures. It is well settled that for purposes of taxation the definitions of real property in the revenue and taxation laws of the state control whether they conform to definitions used for other purposes or not. [Citations.]

''Section 104 of the Revenue and Taxation Code declares that real estate shall include 'improvements,' and section 105

defines improvements as including 'fixtures.' No exception is made in the case of trade fixtures. According to Burby a trade fixture is merely a particular type of fixture, one for which the law makes a special provision permitting its removal under certain circumstances by a lessee from the lessor's real property to which it has been annexed. [Citation.]'' (*Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385, 392-393 [175 P.2d 512].)

Except for *City of Beverly Hills* v. *Albright,* 184 Cal.App. 2d 562 [7 Cal.Rptr. 706], involving an eminent domain proceeding in which the tenant was held to have no compensable interest in the leasehold improvements because of the terms of his lease wherein he expressly assigned his rights to the lessor, the cases cited by appellant, holding that trade fixtures shall be treated as personal property, involve a determination of rights between landlord and tenant. They neither support appellant's position nor are in point in this case which involves the application of California tax laws. The issue concerning the classification of improvements as realty for purposes of taxation has long been decided by the Supreme Court in *Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385 [175 P.2d 512]. There the land owner sued the taxing authority to recover taxes paid by it under protest; tenant bank was not a party because the leasehold improvements were not assessed to it. The tellers' cages, partitions, coupon booths, counters, vault door and other improvements installed by the lessee bank had been assessed to plaintiff, owner of the building, as improvements to real property. The main issue was ''whether the improvements installed in plaintiff's building by the Bank of America . . . and entered upon the tax rolls of defendants for the year 1941, constituted real property for the purpose of taxation and were therefore taxable as such, or whether such improvements remained personal property of [the bank] and were . . . not taxable.'' (P. 388.) The court upheld the classification of the improvements as real property even though the lease between plaintiff and the bank provided for their removal by, and that they would remain the property of, the bank; such lease agreement, it said, ''is not effective against those not bound by the agreement; for example, innocent third persons.'' (P. 397.) As to whether the relationship of landlord and tenant should be considered in determining whether trade fixtures are properly classifiable as improvements to realty for purposes of taxation,

the court continued at page 400 : ''The primary problem of the assessor was to determine whether the improvements in question were fixtures. If they were fixtures they were taxable under Revenue and Taxation Code sections 104 and 105. The further fact that as between landlord and tenant, they might also have been trade fixtures was immaterial.'' (See also *Simms* v. *County of Los Angeles*, 35 Cal.2d 303, 309-310 [217 P.2d 936].)

Finally, it is contended that if the leasehold improvements are properly classifiable as realty they must be assessed to the owner of the land. This claim is made without regard to the trial court's finding that the sign and night depository belong to and are owned by defendant Bank. *Trabue* (1946) and *Simms* (1950), involving pre-1947 situations, hold that when a bank affixes articles to real property which it occupies as a tenant, the landlord *may* be taxed as the owner of the articles, but they do not support the position that where the bank is found to be the owner of the leasehold improvements, the assessor *must* assess the same to the owner of the land in the absence of a written statement attesting to separate owner-ship. In *Trabue Pittman Corp.* v. *County of Los Angeles*, 29 Cal.2d 385 [175 P.2d 512], the court having determined that all of the improvements were assessable as realty, not personal property, simply held that '' [u]nder the circumstances of this case'' (p. 401) the entire building, including all improve-ments, was properly assessed to plaintiff the owner of the land. There is nothing in the opinion that precludes assess-ment of the leasehold improvements to, and the collection of taxes from, their owner (defendant Bank). The court did not pass on whether tenant bank could have been a proper assessee, for that issue was not before it, the assessor having elected to assess the property to the landlord. Nothing in the case indicates that had the improvements been assessed to the bank it would not have been a proper assessee. Moreover, as hereinabove pointed out, under the law prior to 1947, the assessor was not required to assess leasehold improvements separately to the lessee and it was permissible for him if he desired, to assess them to the owner of the property; too, assessments for improvements then constituted a lien upon the taxable land on which they were located regardless of to whom the improvements were assessed. (In 1947 the law was amended to provide that every tax on improvements is a lien upon the land upon which they are located only if such

improvements are assessed to the same person to whom the land is assessed [Rev. & Tax. Code, § 2188].)

 Having determined that the sign and night depository were assessable as improvements to real property, thus realty, rather than as personal property, and that they belonged to and were owned by defendant, we conclude that the same were properly assessed to defendant Bank.

The judgment is affirmed.

Wood, P. J., concurred.

Fourt, J., did not participate.

Appellant's petition for a hearing by the Supreme Court was denied July 19, 1967.