[Civ. No. 12860. Third Dist. Apr. 12, 1972.]

COLLINS ELECTRICAL COMPANY, INC., Plaintiff and Appellant, v. COUNTY OF SHASTA, Defendant and Respondent.

## COUNSEL

Mazzera, Snyder & DeMartini and Anthony Bertolacci for Plaintiff and Appellant.

Robert A. Rehberg, County Counsel, for Defendant and Respondent.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Edward P. Hollingshead, Deputy Attorney General, as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**WHITE, J.**[*]—Plaintiff appeals from the judgment in favor of defendant, denying plaintiff the return of taxes paid under protest.

Plaintiff contends (1) the property sought to be taxed herein is an improvement to real property which must be taxed to the owner of the real property; (2) the Shasta Dam Area Public Utility District, not plaintiff, is the owner of said property; and (3) if it had a taxable interest in personal property, that interest would merely be the right to receive income or a solvent credit.

### Facts

The parties stipulated to the following facts:[1]

Plaintiff is a corporation with its principal place of business in San Joaquin County. On December 11, 1962, the Shasta Dam Area Public Utility District (hereinafter referred to as District) called for bids for the construction of an electric power transmission line from the Keswick switch yard in Shasta County to the District's facilities near Central Valley in said county, and a substation to be situated at the District's facilities near Central Valley in said county. The call for bids impliedly contemplated that title to the electric power transmission lines and the title to the substation would vest in the contractor, subject to a lease and option to purchase in favor of the District. Plaintiff's bid was made on January 11, 1962, and subsequently accepted by resolution of the District's board of directors. Plaintiff and the District thereafter entered into a written 10-year lease dated January 17, 1962, and pursuant thereto plaintiff constructed the transmission line and substation on the District's land, over which plaintiff

---

[*]Assigned by the Chairman of the Judicial Council.

[1]The parties agreed to submit their case upon the settled statement of fact and written briefs.

had been given a right of way for the purpose of the construction. The District accepted and energized the facilities on July 16, 1962, and took and has retained possession and control of said facilities since that date. The District adopted a resolution for the purpose of exercising its option to purchase said facilities pursuant to the provision of the lease on December 6, 1967, but the $300 purchase price is not due until July 16, 1972, upon the termination of the lease.

On November 27, 1968, the Shasta County Assessor assessed plaintiff for unsecured personal property escaped taxes for the years 1965-1966, 1966-1967, 1967-1968 and 1968-1969 on the premise that plaintiff was the owner of the transmission line and substation by reason of the lease and option to purchase. Upon being denied a review by the county board of equalization, plaintiff paid the tax under protest. A similar procedure was followed when plaintiff was assessed for the year 1969-1970. Plaintiff appeals from the judgment based on the court's finding and conclusion that plaintiff is, in fact, the owner of the facilities in question, and the court's conclusion that plaintiff was properly taxed.

Plaintiff contends that the property sought to be taxed herein is an *improvement* to real property which must be taxed to the owner of the real property. Plaintiff argues that the court's finding that it had a taxable interest in *personal* property subject to tax is erroneous. In support of its argument, plaintiff insists that the facilities are fixtures and hence improvements to real property within the meaning of Revenue and Taxation Code sections 104 and 105 since they consist of "an electrical power transmission line fixed to poles deeply embedded in ground owned by the District and an electrical substation embedded in concrete on land owned by the District."

The stipulation of facts does not contain a description of these facilities or the manner in which the facilities were attached to the land, if at all. In his opening brief at trial, plaintiff noted that the transmission line was fixed to poles deeply embedded in the ground, and that the substation consisted of generators embedded in concrete. Defendant did not contradict plaintiff's statement as to the construction of the facilities in his opening brief at trial. To the contrary, defendant argued to the trial court that "[t]he County's position is that it was the *intention* of the parties that this material and equipment remain the property of [plaintiff] *notwithstanding the manner of its attachment* and that it therefore continued to be *personal* property owned by [plaintiff] and assessable to it as such." (Italics added.) The court proceeded to find that "the plaintiff and the Shasta Dam Area Public Utility District at all times *intended* that the above described property should remain the personal property of plaintiff . . . ," and that at no time germane to the action did the property, by reason of its method of attachment or

otherwise, become a part of the real property to which it was attached. (Italics added.)

■ It is solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly " ' " 'An appellate court is not bound by a construction of the contract [or stipulation] based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citation] . . . .' " ' " (*Silva & Hill Constr. Co.* v. *Employers Mut. Liab. Ins. Co.* (1971) 19 Cal.App.3d 914, 921 [97 Cal.Rptr. 498].)

■ Revenue and Taxation Code section 104 provides that " 'real estate' " or " 'real property' " includes improvements. Revenue and Taxation Code section 105 defines " 'Improvements' " as including "[a]ll buildings, structures, fixtures, and fences erected on or affixed to the land, except telephone and telegraph lines." Civil Code section 660 provides, "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws; . . ."

It has been held that in determining whether or not an article is a "fixture," the intention of the parties making the annexation, as manifested by reasonable outward appearances, is one of the factors that can be considered by the court. (*Bank of America* v. *County of Los Angeles* (1964) 224 Cal.App.2d 108, 114 [36 Cal.Rptr. 413]; *Simms* v. *County of Los Angeles* (1950) 35 Cal.2d 303, 309 [217 P.2d 936]; *Trabue Pittman Corp.* v. *County of L.A.* (1946) 29 Cal.2d 385, 397 [175 P.2d 512].) However, defendant failed at trial and fails on appeal to point to any outward appearance that would show that the parties herein "intended" that the facilities remain the personal property of plaintiff. As noted above, the manner of the facilities' attachment was considered irrelevant by defendant. The lease does provide that the facilities may be removed by plaintiff in the event that the District does not exercise its option to purchase. This fact, standing alone, should not be deemed to prove that the facilities are personal property. ■ " 'In order to make an article a permanent accession to land its annexation need not be perpetual. It is sufficient if the article shall appear to be intended to remain where fastened until worn out, unless the purpose to which the realty is devoted has been accomplished or until the article is superseded by another article more suitable for the purpose.' " (*County of Ventura* v. *Channel Islands State Bank* (1967) 251 Cal.App.2d 240, 248 [59 Cal.Rptr. 404].)

This court had occasion recently to note that, effective in 1965, the Legislature adopted a provision declaring that telephone and electrical transmission lines, poles and towers are not tangible personal property for sales tax purposes (Rev. & Tax. Code, § 6016.5), and that the prior law (as applied to the sales tax) had never been delineated by statute or judicial decision, but administrative practice had treated such items as being tangible personal property. We there held that the imposition of the sales tax (prior to 1965) could be sustained as to the tangible components, such as wire, cables, insulators and hardware. (*King* v. *State Bd. of Equalization* (1972) 22 Cal.App.3d 1006 [99 Cal.Rptr. 802].)

The case at bench is distinguishable from the *King* case in that there the issue was the applicability of the sales tax to materials that were being fabricated into the improvement, while here we have the question of the status of the electrical transmission line and the status of the substation insofar as the property taxes are concerned, after the work of improvement was completed.

The parties herein stipulated and the trial court found that the reason for the lease and option to purchase, in effect, was a financing arrangement to avoid the possible violation of the limitation upon funded indebtedness of public utility districts specified in Public Utilities Code section 16573, since the District already had outstanding bonded indebtedness closely approaching the funded indebtedness limitation specified therein. On December 6, 1967, five years prior to the termination of the lease, the District adopted its resolution for the ultimate purpose of exercising its option to purchase the facilities. Thus, it appears that through this arrangement, the parties intended a method whereby the District could obtain its facilities without exceeding its bonded indebtedness, and intended that the facilities would remain until worn out. The provisions of the lease do not show that the parties intended the facilities to be personal property. There is no evidence to support the court's finding on this issue.

Plaintiff had the burden of proving that the facilities in question were fixtures. The pertinent evidence offered below by plaintiff was the stipulation as to the purpose of the lease and option to purchase arrangement, the District's resolution to exercise the option, and plaintiff's uncontradicted statement in its trial brief that the transmission line was fixed to poles deeply embedded in the ground and that the substation consisted of generators embedded in concrete. It appears that the trial court accepted defendant's suggestion that intent of the parties, *notwithstanding* the manner of the facilities' attachment, is sufficient to establish that the facilities were per-

sonal property. As discussed above, the court's finding was in error in that no evidence supports it.

In *Trabue Pittman Corp.* v. *County of L.A., supra*, 29 Cal.2d 391, the Supreme Court held that "trade fixtures," for taxation purposes, should be classified and assessed as realty. They are "improvements" to real property within the meaning of Revenue and Taxation Code sections 104 and 105, and thus properly assessable to the owner of the land. *Trabue* discusses the practical desirability of assessing fixtures as improvements to land, with the owner's right to relief by contract, and noted at pages 392 and 393:

"[U]niformity of taxation cannot be attained unless a uniform classification of real and personal property is established. Just as assessors are not bound by private agreements, they should not be frustrated or hindered in performing their vital functions by the necessity of ferreting out the often undisclosed and secret intentions of lessors and lessees relative to the terms of a lease. For the most part, assessors must be allowed to act on the basis of outward appearances. . . . [T]he law of this state dealing with the status of trade fixtures in general has required, and in the interest of uniformity of taxation should require, that trade fixtures be characterized as real property for taxation purposes, and not as personal property . . . . Section 104 of the Revenue and Taxation Code declares that real estate shall include 'improvements,' and section 105 defines improvements as including 'fixtures.' No exception is made in the case of trade fixtures."

In their pretrial statements, the parties agreed that they were concerned with the taxable interest, if any, that plaintiff had in the transmission line and substation. It appears that plaintiff's purpose for challenging the *status* of the property was based on its belief that if the facilities were deemed "fixtures" and thus improvements and real property, then it could only be assessed and taxed if it had a *possessory interest* in the facilities which it constructed for the district, an interest it argued it did not have. We agree. The lease provided for possession and control of the facilities and the risk of loss thereof to be that of the District. The plaintiff's right of possession only became a reality on breach or in the event the District did not exercise its option to purchase, which events were not expected by the parties. The parties stipulated and it is obvious that the "arrangement" was simply a financing device to avoid any possible violation of law by the District. Where it appears that the essential indicia of ownership are in a tax-exempt District, such as here, a financing arrangement should not be conclusive of ownership for tax purposes. That is the essence of the holding in *General Dynamics Corp.* v. *County of L.A.* (1958) 51 Cal.2d 59 [330 P.2d 794], and the cases therein cited at page 67.

With the determination here made, it becomes unnecessary for us to consider other arguments advanced by plaintiff.

For the reasons herein stated, the judgment is reversed.

Friedman, Acting P. J., and Regan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 22, 1972. Burke, J., was of the opinion that the petition should be granted.