[Civ. No. 43826. Second Dist., Div. Three. May 29, 1975.]

A. S. SCHULMAN ELECTRIC COMPANY,
Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION,
Defendant and Appellant.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■

COUNSEL

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Neal J. Gobar, Deputy Attorney General, for Defendant and Appellant.

Rollin E. Woodbury, Harry W. Sturges, Jr., Norman E. Carroll and Richard M. Mark for Plaintiff and Respondent.

OPINION

COBEY, Acting P. J.—This appeal by the State Board of Equalization (Board) from adverse judgments in two refund suits by A. S. Schulman Electric Company (taxpayer) poses primarily the question of the pre-1965 taxability under the Sales and Use Tax Law of the cost of the labor expended by the taxpayer in largely on-site assembly of certain electrical power transmission and distribution facilities for Southern California Edison Company (Edison), a privately owned public utility.[1] ■ The Board takes the position that, aside from installation labor (the bolting of the steel towers to their foundations and the placing of the wooden poles into the ground (§§ 6011, subd. (c)(3), 6012, subd. (c)(3)), both the labor and the material costs of the erection of these lines were taxable under section 6006, subdivision (b), as being essentially the fabrication of tangible personalty for a consideration for a consumer who furnished the materials used in such work. The subdivision makes such work a sale of tangible personalty. The taxpayer's view, on the other hand, is that the labor at issue was not taxable fabrication labor within

---

[1]The suits cover the periods April 1, 1956, through March 31, 1959 (Los Angeles County Superior Court No. 825686) and July 1, 1959 through December 31, 1961 (Los Angeles County Superior Court No. 830193). They resulted in judgments for the taxpayer in the amounts of $22,779.02 and $123,756.93. The lines erected by the taxpayer for Edison were primarily steel tower lines and secondarily wooden pole lines.

Revenue and Taxation Code section 6016.5 (added by Stats. 1965, ch. 1960, § 2, p. 4488, effective Sept. 17, 1965) reads as follows:

"Notwithstanding any other provision of law, 'tangible personal property,' for purposes of this part, does not include telephone and telegraph lines, electrical transmission and distribution lines, and the poles, towers, or conduit by which they are supported or in which they are contained."

Its effect is prospective only and it expressly did not affect the taxability of electrical transmission and distribution lines before 1965. (*Id.*, § 3, p. 4488.)

All statutory references hereafter are to the Revenue and Taxation Code unless otherwise indicated.

The taxpayer agreed to reimburse Edison with the amounts recovered in the suits as Edison, under its contracts with the taxpayer, paid the sales taxes at issue.

■■■■■■■■■■■

the meaning of section 6006, subdivision (b), but was rather installation labor expressly excluded by the just-mentioned subdivisions (c)(3) of sections 6011 and 6012.

The trial court concluded that under *King* v. *State Bd. of Equalization,* 22 Cal.App.3d 1006 [99 Cal.Rptr. 802], and Ruling No. 11 of the Board (Cal. Admin. Code, tit. 18, § 1521), the taxpayer was entitled to certain refunds, including interest, which we have already specified. In *King,* the Third District of this statewide court held that a contractor who constructed electrical transmission lines for the City and County of San Francisco by stringing and fastening the conductors (the lines, etc.) on steel towers, furnished by the city and county, but erected on concrete foundations prepared by him, did not sell such lines to the city and county within the meaning of section 6006, subdivision (b), and that the transaction was taxable instead under the Sales and Use Tax Law only as a construction contract. (*King,* at pp. 1009, 1112.) This treatment of the transaction excludes from the tax base the contractor's outlay for labor. (*Id.,* at p. 1014.)

As the trial court concluded in the two cases before us, the factual differences between the situation in *King* and those presented in these cases are without legal significance in deciding how the respective transactions should be taxed under the Sales and Use Tax Law. Here, Edison supplied the taxpayer with the foundations or footings of the steel towers and with all the other component parts and items that were used by him in erecting the transmission and distribution facilities. The taxpayer made the steel towers from pieces of angle iron which were bolted to each other by means of steel plates. As regards the wooden pole facilities the taxpayer apparently erected them in place. The taxpayer's wire crew then placed on the towers or poles the aerial ground wire and the conductors. Then the taxpayer installed the various protective devices. After appropriate tests of the completed facilities by Edison, it accepted them.

The foregoing series of operations by the taxpayer resulted in the construction and delivery by the taxpayer to Edison of completed and usable electrical transmission and distribution facilities. In our view the taxpayer's labor in assembling these facilities largely on-site (aside from the installation components thereof) was fabrication labor. The word "fabricate" means, among other things, to construct by assembling the necessary parts and components. (See The Random House Dict. of the English Language (unabridged ed. 1966) p. 508.)

But we agree with *King,* 22 Cal.App.3d at pages 1013-1014, that here, as there, the contractor was engaged in the construction of structures on land—namely, electrical transmission and distribution lines. These structures, because of their relatively permanent nature and their either being bolted to concrete foundations or imbedded in the land, seem to us to constitute realty rather than tangible personalty. (See Civ. Code, §§ 657, 658, 660, 663; *Collins Electrical Co. 'v. County of Shasta,* 24 Cal.App.3d 864, 869 [101 Cal.Rptr. 285]; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Personal Property, § 52, pp. 1660-1661; cf. *City of San Joaquin v. State Bd. of Equalization,* 9 Cal.App.3d 365, 372-373 [88 Cal.Rptr. 12].) These lines were in fact relatively immobile.[2] They represented the means by which the land on which they stood and over which they passed was devoted to the purposes for which Edison had acquired either an easement in or ownership of the land. In short, the taxpayer was a contractor constructing structures on land rather than a seller at retail of assembled tangible personalty. (See § 6051; *Livingston Rock & Gravel Co. v. De Salvo,* 136 Cal.App.2d 156, 160 [288 P.2d 317].)

The Board argues that we should not follow *King* because *King's* holding regarding the extent of the taxability under the Sales and Use Tax Law of a contractor for the erection of electrical transmission lines for another is contrary to a long-established and reasonable administrative regulation of the Board, namely, Ruling No. 15 (Cal. Admin. Code, tit. 18, § 1526), interpreting the aforementioned section 6006, subdivision (b). But this regulation does not mention electrical transmission lines. Rather, as *King* points out (22 Cal.App.3d at pp. 1010-1012), the Board's administrative practice of classifying electrical transmission lines as tangible personalty rests solely upon a questionable[3] (as the trial court noted) 1936 opinion of the Attorney General (No. 10585) holding that *for property tax purposes* such lines came within the exception (found within a statutory definition of improvements) that covers expressly only telephone and telegraph lines (see § 105, subd. (a)) and that there is nothing in the Sales and Use Tax Law itself suggesting that property tax definitions should be imported into it. We agree with *King* that a long-established administrative practice which rests upon a clearly

---

[2] The taxpayer in his brief has argued otherwise on the rationale that such facilities are frequently removed and relocated. There is nothing in the record, though, to support this assertion. We do not doubt that these facilities are removed when they have served their purpose, but then so are, occasionally, nonprefabricated houses, which clearly are a species of realty. In this connection we note that the trial court expressly found that these *transmission and distribution facilities were improvements on and to real property.*

[3] We characterize the opinion as questionable because it ignores the *expressio unius* rule of construction and relies instead exclusively on out-of-state authorities without any showing that the statutes elsewhere are comparable to the one being construed.

legally incorrect basis should not be followed by courts, which are, after all, the ultimate interpreters of statutes. (See *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.,* 24 Cal.2d 753, 757-758 [151 P.2d 233, 155 A.L.R. 405]; *Nelson* v. *Dean,* 27 Cal.2d 873, 875 [168 P.2d 16, 168 A.L.R. 467]; *Coan* v. *State of California,* 11 Cal.3d 286, 294, fn. 9 [113 Cal.Rptr. 187, 520 P.2d 1003].)

■  The Board challenges the correctness of the judgment for the taxpayer in the second case under appeal (No. 830193) on the additional ground that the trial court erred in not including therein an offset in favor of the Board to cover certain taxes allegedly due under the Sales and Use Tax Law in connection with the performance of certain contracts with the United States by a joint venture in which the taxpayer was one of the two venturers. (See §§ 6007.5, 6384; *C. R. Fedrick, Inc.* v. *State Bd. of Equalization,* 38 Cal.App.3d 385, 399-400 [112 Cal.Rptr. 598].) The Board argues that such offset should have been made because the trial court, as previously noted, expressly held that under *King* the construction of the electrical transmission and distribution facilities at issue was to be deemed the construction of improvements on and to real property and, if that situation obtained, the taxpayer as one of the two members of the joint venture which constructed like facilities for the United States, thereby became liable for certain taxes under the Sales and Use Tax Law which should have been offset in these proceedings.

We hold that the trial court was correct in refusing to make the requested offset. First, the taxes which the Board sought to offset relate to a period (Apr. 1, 1962, to Mar. 31, 1965), which was not before the court in either of the cases. Secondly, neither the joint venture, a separate taxable entity, nor the other joint venturer has ever been made a party in either case. Thirdly, proceedings to determine whether the joint venture owes these taxes are still pending before the Board itself.

The judgments in both cases are affirmed.

Allport, J., and Potter, J., concurred.