[Civ. No. 9320. Third Dist. Oct. 28, 1958.]

HAYWARD BUILDING MATERIAL COMPANY (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION, Appellant.

Edmund G. Brown, Attorney General, James E. Sabine and Irving H. Perluss, Assistant Attorneys General, for Appellant.

Cooley, Crowley, Gaither, Godward, Castro & Huddleson and Nathan G. Gray for Respondent.

PEEK, J.—This is an appeal by defendant from a judgment in favor of plaintiff in an action brought by it to recover taxes alleged to have been improperly assessed under the Sales and Use Tax Law (Rev. & Tax. Code, § 6001).

There is no dispute as to the essential facts, which appear by stipulation of the parties. Additional facts in amplification of the stipulation appear from the testimony of the one witness called by plaintiff, its president. The record so presented shows without conflict that plaintiff was in the business of furnishing wet-mix concrete and asphalt to construction contractors. Its method of operation was to purchase the dry ingredients of the concrete, such as cement, rock, sand, gravel and other additives, which it would compound at its plant. Upon receiving an order for concrete, the raw ingredients, according to specifications, were combined with water in a rotating drum attached to a truck and transported from the plant to the building site. By the time of arrival the mixture had become wet-mix concrete, ready to be discharged from the mixing drum on the truck into forms at the job site. Plaintiff did not in any way participate in the building of the forms, their location at the job site, or their removal after the concrete had hardened. All tamping, troweling, leveling, finishing of the concrete, or other handling when required, was done by the contractor. The only employee of plaintiff customarily at the job site was the truck driver whose sole duty was to spot the truck and pour the concrete into the forms as directed by the contractor.

The procedure followed as regards the asphalt sold by plaintiff was substantially the same. The total mixing operation, however, took place in plaintiff's plant, and thereafter the asphalt was transported by dump truck to the job site. In accordance with the contractor's instructions, the asphalt was dumped either on the ground or in front of a paving machine which did the spreading. Any spreading, leveling or compacting was done by the contractor and not by the plaintiff.

During the period from July, 1946, to September, 1949, plaintiff furnished various construction firms with $902,302.29

worth of wet-mix concrete and asphalt. Plaintiff paid a sales tax on the raw materials at the time they were purchased. No sales tax was collected on the subsequent sale of the prepared product to various construction firms. Defendant State Board of Equalization, upon a redetermination under the Sales and Use Tax Law, characterized the latter transactions as retail sales under the Revenue and Taxation Code, section 6051, and assessed additional taxes on the gross receipts of the 1946-49 period amounting to $27,904.73. Pursuant to the redetermination, plaintiff paid the additional tax assessed and subsequently filed a claim for refund with the defendant board. The claim was denied and this action was filed in the superior court where judgment was entered in favor of the plaintiff and against the defendant board for the amount paid under the redetermination plus interest.

Sales and Use Tax Ruling Number 11 (Cal. Admin. Code, tit. 18, § 1921) provides in part as follows:

"Definitions: The term 'contractor' as used herein includes both general contractors and subcontractors and includes contractors engaged in such building trades as carpentry, bricklaying, cement work, steel work, plastering, sheet metal work, roofing, tile and terrazzo work, electrical work, plumbing, heating, air conditioning, painting and interior decorating.

"The term 'construction contract' as used herein means a contract for erecting, remodeling, or repairing a building or other structures on land and includes lump-sum, cost-plus, and time-and-material contracts. The term 'construction contract' does not include a contract for the sale and installation of machinery or equipment.

"The term 'materials' as used herein means tangible personal property which when combined with other tangible personal property loses its identity to become an integral and inseparable part of the completed structure.

"Materials Used by Contractors: Contractors are the consumers of materials used by them in fulfilling construction contracts and the tax applies to the sale of such materials to the contractors. . . ."

 We are constrained to view the question presented as much less complex than would appear from plaintiff's brief. In this we must agree with the defendant board that the uncomplicated issue is whether or not plaintiff was a construction contractor with respect to its sales of wet-mix con-

crete and asphalt. If it was, then it could be taxed only as a consumer and hence is entitled to a refund of the taxes paid. If not, then it should be taxed as a retailer and hence is entitled to no refund.

In accordance with its statement of the case, it is the primary contention of the board that plaintiff is simply selling at retail two products which it manufactures—wet-mix concrete and asphalt—and that the only service which it performs is the delivery of the product to the job site; that the consumer of these products is the contractor who renders the service involved in preparing the forms, tamping, troweling, finishing, spreading and leveling the concrete or asphalt as the case may be; and that therefore plaintiff is not a contractor within the meaning of Ruling Number 11.

The record shows without conflict that plaintiff renders two distinct services. The first involves the compounding of raw materials in transit or at its plant. The second is the transportation and discharge of the finished product at the construction site. Although it appears that the trial court considered the service rendered sufficient to constitute engaging in the actual building construction and erection of structures on land, thus bringing the plaintiff within the provisions of Ruling Number 11, we cannot agree that the evidence, which is undisputed, was sufficient to warrant such finding by the court.

In support of the judgment plaintiff contends that it was rendering a service within the meaning of Ruling Number 11. At the outset of this argument it indulges in an unwarranted assumption that it was a subcontractor performing a service for the general contractor by obtaining the ingredients, apportioning and mixing them, having them ready at the proper time and ultimately pouring the concrete into the forms or the asphalt on the road bed, something which the general contractor could have done for himself, and hence the only transaction to which the tax could apply would be the sale of the ingredients. The obvious answer to such argument is that the contractor, rather than doing those things for himself, chose to purchase the finished product from plaintiff. The illustration used by the attorney general in answer to plaintiff's argument is most apt. ''Thus, if one were to purchase lumber to make a ping-pong table, obviously the tax would be measured by the cost of the lumber. On the other hand, if one were to purchase a completed ping-pong table, clearly the tax would be measured by the price of the table

without deduction for '. . . labor or service cost . . .' as provided in section 6012.'' This is the difference which always exists where a customer purchases raw materials rather than a finished product.

Furthermore from an examination of the transactions between plaintiff and its customers, it is apparent no construction contracts were either intended or negotiated. The sole document offered in evidence, a purchase order from one of plaintiff's customers, is conceded to be typical of the orders received. It is apparent therefrom that plaintiff's customers simply ordered material for their construction projects and nothing more. Nothing contained in the purchase order can be construed to evidence an intent to engage plaintiff as a construction contractor. The testimony of the plaintiff's president was that most of the concrete was delivered without any document; that most orders were received orally or by telephone and thereafter some, but not all, were confirmed; that many times the job was finished before plaintiff received a purchase order; and that such purchase orders were issued for the convenience of the issuer and not for the convenience of the seller. In other words, plaintiff was not performing work pursuant to construction contracts, but was merely selling a product—wet-mix cement or asphalt.

It necessarily follows that plaintiff is not a contractor and hence not a consumer within the provisions of Ruling Number 11, and therefore the tax would apply to it as a retailer of the products which it manufactures and sells.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.