[Civ. No. 24650. Second Dist., Div. Three. Apr. 7, 1961.]

OVERLY MANUFACTURING COMPANY OF CALIFORNIA, Appellant, v. STATE BOARD OF EQUALIZATION, Respondent.

Clifford W. Twombly for Appellant.

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, and Joe J. Yasaki, Deputy Attorney General, for Respondent.

VALLÉE, J.—Appeal by plaintiff from the part of a judgment which denied a refund of state sales taxes.

During the period from January 1, 1954, through September 30, 1956, plaintiff was engaged in the business of manufacturing specialty items consisting of steel doors, door frames, and inside window frames. It was licensed as a construction contractor and also licensed by the State Board of Equalization as a seller and retailer of tangible personal property. It reported to the latter on a quarterly basis its gross receipts and the self-assessed tax thereon, and paid the same. The board conducted an audit of plaintiff's transactions during the period and determined that the amount of self-assessed tax was understated with respect to gross receipts attributable to 272 contracts entered into between plaintiff and various general contractors. The board issued a deficiency determina-

tion for the sum of $5,730.57. A petition for redetermination was denied. Plaintiff paid the deficiency and filed a claim for refund, which was also denied. Plaintiff brought this action seeking to recover the amount paid with interest from the date of payment.

Fourteen of the contracts in question were introduced in evidence with the stipulation of the parties that they were representative of all of the 272 contracts involved in the litigation. In each instance the contract specified that steel frames were to be furnished f.o.b. the job site or otherwise indicated they were to be delivered to the job site. Pursuant to each contract plaintiff manufactured the frames to specification for various structures and delivered them to the job sites where they were incorporated into the walls of the buildings by the general contractors or others. Plaintiff then inspected the frames to determine the exact measurements after installation and the exact locations of cutouts for hardware so that doors could be made to fit properly. Hardware locations would sometimes have to be reworked in the field. While there was some testimony that plaintiff may have done other work in making "necessary corrections" in the installed frames, it was so vague and uncertain with respect to what was done as to be lacking in probative value. The record indicates that any adjustment or rework of the frames at the job sites was done to facilitate the installation of the doors. Thereafter plaintiff manufactured and installed steel doors in some of the frames.

Each contract called for a lump-sum price for the frames and doors and for installation of the doors with no breakdown given to the contractor showing the price of the frames separately. Payments were received periodically by plaintiff on the basis of estimates of the percentage of completion. A percentage of the total contract price was retained by the general contractor until completion of the work and in most cases until the building was completed.

The records of plaintiff were maintained on a contract basis. However, for its own information in connection with the bidding price on each contract it prepared a breakdown showing the amount of sale attributable to the frames which were not installed by it. Plaintiff, considering itself to be a consumer of materials used in fulfilling construction contracts within the purview of Ruling 11 of the Board of Equalization (Cal. Admin. Code, tit. 18, § 1921), reported its tax on the basis of the cost of the materials used in the construction

of the frames and doors. In issuing its deficiency the board determined that plaintiff was merely selling at retail the frames which it manufactured and that a sales tax measured by the gross receipts attributable to the frames was due. No additional tax was assessed in connection with the doors.

The court found the facts as we have stated them and that: under the terms of the contracts title to and possession of the frames were transferred to the general contractor at the building sites at the time of delivery; as to the frames, plaintiff was a retailer of tangible personal property and not the consumer of materials used in fulfilling construction contracts. It concluded as to the frames that plaintiff was not a consumer of materials within the meaning of Ruling 11 of the Board of Equalization (Cal. Admin. Code, tit. 18, § 1921) but was a retailer making retail sales, and its gross receipts attributable to the frames were subject to the state sales tax. The issue is whether the trial court was correct in its conclusion.

First, however, plaintiff asserts that pursuant to Code of Civil Procedure, section 634,[1] this court shall not infer that the trial court found in favor of the board because prior to the entry of judgment plaintiff made a written request for specific findings which was denied by the trial court. That section so directs where ''it appears that the court has not made findings as to all facts necessary to support the judgment, or that the findings are ambiguous or conflicting upon a material issue of fact. . . .'' The findings are as to all facts necessary to support the judgment and are neither ambiguous nor conflicting on a material issue.

The questions are: (1) May a lump-sum contract be considered divisible for the purpose of collecting sales tax with

---

[1]Section 634: "In all cases where findings are to be made, a copy of the proposed findings shall be served upon all parties to the action and the court shall not sign any findings therein prior to the expiration of five days after such service. The court may direct a party to prepare findings.

"Within five days after such service any other party may serve and file objections, counter-findings and requests for special findings.

"If upon appeal or upon a motion under Section 657 or 663 of this code it appears that the court has not made findings as to all facts necessary to support the judgment, or that the findings are ambiguous or conflicting upon a material issue of fact, the court before which such appeal or motion is pending shall not infer that the trial court found in favor of the prevailing party on such issue if it appears that the party attacking the judgment made a written request for a specific finding on such issue either prior to the entry of judgment or in conjunction with a motion under Section 663 of this code."

respect to a portion of the materials called for by the contract and of collecting use tax with respect to the balance of the materials? (2) If so, was there a sale of tangible personal property as to the frames within the meaning of the statutes and the rulings of the board?

The sales tax is an excise tax for the privilege of selling tangible personal property at retail. It is measured by gross receipts from such sales. (Rev. & Tax. Code, § 6051;[2] *Western Lithograph Co.* v. *State Board of Equalization,* 11 Cal.2d 156, 163 [78 P.2d 731, 117 A.L.R. 838].) "Sale" means and includes any transfer of title or possession for a consideration (§ 6006, subd. (a)); it also means and includes a transfer for a consideration of the title or possession of tangible personal property which has been fabricated to the special order of a customer. (§ 6006, subd. (f).) "A 'retail sale' or 'sale at retail' means a sale for any purpose other than resale in the regular course of business in the form of tangible personal property." (§ 6007.)

Sales tax statutes do not impose a tax on services, and expressly exclude from gross receipts of sales any amount received for labor or services used in installing or applying the property sold. (§§ 6011, 6012.) Nevertheless where some portion of the sales price is represented by the cost to the seller of labor in assembling or manufacturing an article, or of any services that are "a part of the sale," no deduction is allowed from the sale price in determining gross receipts from which the tax is measured. (§§ 6011, 6012.)

In defining the line between a sale of tangible personal property and a sale of services, the board has adopted rules applicable to particular situations. Ruling 1 (Cal. Admin. Code, tit. 18, § 1901) in part provides:

"Persons engaged in the business of rendering service are consumers, not retailers, of the tangible personal property which they use incidentally in rendering the service. Tax, accordingly, applies to the sale of the property to them. If in addition to rendering service they regularly sell tangible personal property to consumers, they are retailers with respect to such sales."

A person or company may be either a consumer or a retailer or both, and as to tangible personal property that it sells it is a retailer. (*Market St. Ry. Co.* v. *California State Board of Equalization,* 137 Cal.App.2d 87, 96 [290 P.2d 20].)

---

[2] All references to code sections hereafter are to the Revenue and Taxation Code unless otherwise indicated.

For particular application to the construction industry the board adopted Ruling 11 (Cal. Admin. Code, tit. 18, § 1921), the application of which is in question. The rule has been in effect for many years. It classifies the construction of a building or other structure where the materials used lose their identity in the completed structure as a sale of services; it classifies the construction or addition of fixtures that, although attached to realty, do not lose their identity on annexation as a sale of property. This classification has been upheld as reasonable and fair and within the rule-making power of the board. (*General Elec. Co.* v. *State Board of Equalization*, 111 Cal.App.2d 180, 187-188 [244 P.2d 427].) The pertinent provisions of Ruling 11 are quoted in the footnote.[3]

Plaintiff says it was a "contractor"; the contracts were

---

[3] "1921. Construction Contractors Generally. (a) Definitions: (1) The term 'contractor' as used herein includes both general contractors and subcontractors and includes contractors engaged in such building trades as carpentry, . . . steel work. . . .

"(2) The term 'construction contract' as used herein means a contract for erecting, remodeling, or repairing a building or other structures on land and includes lump-sum, cost-plus, and time-and-material contracts. The term 'construction contract' does not include a contract for the sale and installation of machinery or equipment.

"(3) The term 'materials' as used herein means tangible personal property which when combined with other tangible personal property loses its identity to become an integral and inseparable part of the completed structure. . . .

"(4) The term 'fixtures' as used herein means things which are accessory to a building and which do not lose their identity as accessories when placed or installed. . . .

"(b) Materials Used by Contractors: (1) Contractors are the consumers of materials used by them in fulfilling construction contracts and the tax applies to the sale of such materials to the contractors.

"(2) If, however, in the case of a time-and-material contract the contractor bills his customer an amount for 'sales tax' computed upon his marked-up billing for materials, it will be assumed, in the absence of convincing evidence to the contrary, that he regards himself as selling the materials so billed, and tax will apply to the amount of the billing for materials.

"(c) Fixtures Furnished and Installed By Contractors: Contractors are retailers of 'fixtures' which they furnish and install and tax applies to the retail selling price thereof; which, in the case of lump-sum construction contracts, is regarded as the cost price of the fixtures to the contractors. If the contractor is the manufacturer of the fixtures, the retail selling price thereof is the prevailing price at which similar fixtures in similar quantities ready for installation would be sold to contractors.

"(d) Other Sales by Contractors: Tax applies to all retail sales by contractors, including the furnishing and installation of fixtures (see above), over-the-counter sales, and 'jobbing sales.' 'Jobbing sales' are repair and replacement jobs in which the materials and fixtures are billed at retail."

"lump sum construction contracts"; the materials used in both the doors and frames became an integral and inseparable part of the completed structure; and it necessarily follows pursuant to Ruling 11 that it must be deemed to be a consumer of the "materials used in fulfilling the 272 construction contracts." Plaintiff asserts it is not necessary that it have performed the actual work of combining the frames with other tangible personal property in order that Ruling 11 be applicable to it.

The board interprets the ruling otherwise. It contends Ruling 11 is applicable only to a contractor who performs the actual work of erecting, remodeling, or repairing a structure, and consumes the particular materials in that activity. It urges that unless the contract requires the contractor to do the erecting, remodeling, or repairing, and to use the materials pursuant to that activity, the contractor does not use the material in fulfilling a construction contract. In this respect, the board says the frames have been used by the contractor who installed them. It asserts that furnishing materials without supplying the services in which they are used is typical of and no different from any sale of personal property by a retailer; and that as to the frames the situation falls not within Ruling 11 but within the second sentence of Ruling 1: "If in addition to rendering service they regularly sell tangible personal property to consumers, they are retailers with respect to such sales."

Plaintiff's argument ignores the dual nature of the contracts involved. It insists that each contract be classified as a unit as a "construction contract" and that all the materials supplied be considered "used by them in fulfilling construction contracts." It cites the following cases as authority for the proposition that a contract by its own terms determines whether it is a construction contract and that if it is so determined, then the contractor is the consumer of all materials used in fulfilling the contract.

In *Levine* v. *State Board of Equalization*, 142 Cal.App.2d 760 [299 P.2d 738], cited by plaintiff, the taxpayer designed and fabricated water-cooling towers, aerial towers, and industrial wooden products. The items were either (1) sold and merely delivered to the job sites, or (2) erected on the customer's job sites by the taxpayer. The case was solely concerned with the fact that the taxpayer fabricated towers in California which he erected outside the state on customers' job sites. The argument, rejected by the court, was that no

use tax was due on the materials purchased and used in the fabrication in California. It was held that the taxpayer was a consumer of the materials so used and thus required to pay the use tax on the price paid by him for the materials. No deficiency tax assessments were made on out-of-state sales not involving erection. Levine is of no help to plaintiff.

In *Greenblatt* v. *State Board of Equalization,* 148 Cal.App. 2d 619 [307 P.2d 379], the taxpayers furnished precut lumber and other building materials for "do-it-yourself" builders and supplied an undetermined amount of assistance to their customers in the actual construction work in accordance with an agreement they had made with a bank which provided financing. The trial court's finding, sustained on review, was that the services performed by the taxpayers were merely incidental to the sales and they were not consumers within the meaning of Ruling 11. Greenblatt is in accord with the conclusion of the trial court at bar as to the frames.

In *Hayward Bldg. Material Co.* v. *State Board of Equalization,* 164 Cal.App.2d 607 [330 P.2d 855], the taxpayer furnished wet-mix concrete which it mixed in transit and poured into forms prepared by contractors at job sites, and asphalt which it mixed at its plant, transported to job sites, and dumped on the ground. It was held on review, reversing the trial court, that the taxpayer was not a contractor performing work pursuant to construction contracts and therefore was not a consumer within the meaning of Ruling 11. Hayward supports the conclusion that as to the frames plaintiff was not a consumer within the meaning of Ruling 11.

The contracts between the contractors and plaintiff were of a dual nature; one part dealt with the manufacture and installation of doors; the other part dealt solely with the manufacture and sale of frames—tangible personal property. The cited cases did not concern contracts of a dual nature, one part of which deals with the installation of materials and the other part of which deals solely with supplying materials, as does the present case. We cannot disagree with the proposition that a contract must be determined by its terms, but the terms of the contracts in question called for performances by plaintiff which it appears could each be carried out separately and apart from the other and which for tax purposes are separately classified. To exact a tax where it is clearly intended by the Legislature that it be imposed, the trial court properly broke down the retail sales value attributable to the frames from the lump-sum contract price.

In each of the cited cases the materials were incorporated as an integral and inseparable part of a structure—in Greenblatt and Hayward, not by the taxpayers, but by others; in Levine, by the taxpayer. In view of the holdings, it is clear that the fact tangible personal property is supplied for the purpose of being incorporated into a structure is not sufficient to classify the supplier as a construction contractor. or as a consumer of the materials. He must actually engage in the service of incorporating them into the structure, and the service must be more than merely incidentally performed to accomplish the sale. (§§ 6011, 6012.) The fact that pursuant to the same contract he incorporates other materials into the structure is not sufficient reason for determining that he is a consumer of all the materials and taxable only on the basis of the price he paid for all the materials. To so hold would result in an unfair competitive advantage to such contractor inasmuch as other suppliers of that type of materials who do not engage in construction work would have to pay tax based on the gross amount received as payment for the materials from a purchaser.

In view of what has been said, the question whether sales tax may be assessed by reference to the gross receipts attributable to the steel frames is answered in the affirmative by applying to the facts the sections of the code previously mentioned. The frames were installed by the general contractor or by persons other than plaintiff. It follows that no charge could be made by plaintiff for installation services and therefore for sales tax purposes no deduction for services may be made from gross receipts. Nor may the costs of labor used in manufacturing the frames be deducted. If the general contractor had purchased the materials to make the frames, obviously the tax would be measured by the cost of those materials. But, as he purchased the completed frames, clearly the tax is measured by the price of the frames without deduction for either the cost of labor in manufacturing or the cost of services in installing them.

Plaintiff argues there was no sale of tangible personal property. As we have stated, the court found that title and possession of the frames were transferred at the time the frames were delivered to the job sites. Plaintiff contends the evidence is insufficient to support this finding. The argument is that the contracts were so worded it was clearly the intent of the parties that no transfer of title or possession of either the frames or doors was to be accomplished until the particular

contracts had been accepted after completion of each structure; and that at the time the acceptances were given and title transferred, the frames had become real property.

Under subdivision (a) of section 6006, it is the intention of the parties which controls when title to tangible personal property passes, and this intention is governed by the common-law principles codified in the Uniform Sales Act. (*Everly v. Creech,* 139 Cal.App.2d 651, 657 [294 P.2d 109]; *Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672].) Where there is a contract to sell future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. (Civ. Code, § 1739, rule 4(1).) The most obvious act of appropriation by the seller is delivery to the buyer, and upon the acceptance of such delivery by the buyer, title passes. (Civ. Code, § 1739, rule 4(2).) But if the contract requires the seller to deliver the goods at a particular place, the property does not pass until the goods have been delivered to the place agreed upon. (Civ. Code, § 1739, rule 5.)

The contracts between plaintiff and the general contractors provided that plaintiff furnish the frames f.o.b. the job sites. The prime contracts for the erection of the structures generally provided that the general contractors assume all risks of damage to their work and materials prior to the completion and acceptance of the work; and the contracts between plaintiff and the general contractors generally provided that plaintiff assume all the obligations of the general contractor insofar as they were applicable to the subcontract. Plaintiff's contention appears to be that these provisions indicate it was not intended that title pass on delivery since the risk of loss in respect to the frames remained on plaintiff until acceptance of the building. As to the frames, we think for tax purposes the receipt of them by the general contractor amounted to acceptance of them, and title must be considered to have passed from plaintiff to the general contractor at that time. Since plaintiff was not required to perform any work in installing the frames, the provision that it assumed all risks and damage to its work and materials prior to the completion and acceptance of its work must necessarily be construed as applying to work and materials used in the installation of the doors. In any event, it is difficult to perceive how accept-

ance could have been withheld beyond the point where the frames were incorporated as an integral part of the structure. (Civ. Code, § 1768.)[4]

There is additional authority without reference to transfer of title for a finding that a "sale" took place on delivery. As mentioned earlier, subdivision (f) of section 6006 provides a special definition of sale as "A transfer for a consideration of the title or *possession* of tangible personal property which has been produced, fabricated, or printed to the special order of the customer. . . ." (Emphasis added.) The frames were manufactured to special order and possession was transferred to the general contractor at the job site. Clearly the transaction in respect to the frames falls within this definition. Further, the argument that there was no sale of tangible personal property because at the time title was transferred the frames had become real property was emphatically rejected in *General Elec. Co.* v. *State Board of Equalization*, 111 Cal.App.2d 180 [24 P.2d 427], with this statement (p. 185):

"[T]he argument that, because the generator became taxable as real property in the hands of Pacific, the transaction by which title was transferred to Pacific by General is conclusively determined to be not a sale, is unsound. The generator in place was clearly real property and taxable as such. But we are not interested in the nature of the property in the hands of the buyer, but in its nature in the hands of the seller—General. The sales tax is imposed on the seller, not upon the buyer. . . . Clearly, title passed from General to Pacific. In General's hands the title it possessed was title to personal property. General never had title as real property. What it had it passed to Pacific, and that was title as to tangible personal property. That is all that is required by the act."

The fact that after title to the frames passed to the contractor they became an integral part of the completed structure is of no consequence. Nor does it follow from the mere fact the contracts may be called construction contracts or that plaintiff was a subcontractor, that it was the consumer of all materials used in fulfilling them and that therefore the

---

[4]Civil Code, section 1768: "The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

deficiency levied was improper. And the fact the sales of the frames were made in conjunction with sales of doors which the contracts required plaintiff to install in no way affects the retail nature of the sales of the frames.

Affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 31, 1961.