[Civ. No. 48209. Second Dist., Div. Five. Jan. 27, 1977.]

WESTERN CONCRETE STRUCTURES, INC.,
Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, Philip C. Griffin and Rodney Lilyquist, Jr., Deputy Attorneys General, for Defendant and Appellant.

Spensley, Horn, Jubas & Lubitz, Marvin Jubas and Daniel L. Dawes for Plaintiff and Respondent.

## OPINION

HASTINGS, J.—Western Concrete Structures, Inc. (WCS), plaintiff and respondent, paid under protest to the State Board of Equalization (Board), defendant and appellant, an assessment for state sales and use tax. The amount in controversy is $35,348 plus interest as provided by law. A written stipulation of facts was presented by the parties and oral and documentary evidence was introduced by WCS. The trial court held that WCS was a construction contractor on the contracts in question and thus entitled to be treated as a "consumer" of materials under California Administrative Code, title 18, article 12, section 1521. Therefore, judgment was entered in favor of WCS and against Board.

During the period in question WCS entered into certain transactions under lump sum contracts in which it furnished shop drawings, post-tensioning tendons (steel strand, end anchorage hardware and sheathing), rental of stressing equipment, and field supervision. The architectural and engineering plans required that a specified amount of force was to be supplied by WCS's post-tensioning system. From these plans WCS calculated the quantity of tendons and the stress to be applied thereto necessary to provide the specified force, allowing for friction and loss of force over the useful life of the structure.

Once WCS signed a contract, it prepared shop drawings which showed the numbers and lengths of tendons, the placement location of the tendons, and the concrete pouring sequences. The drawings were then approved by the general contractor and the project owner's representative. WCS thereafter fabricated and cut the tendons and delivered them to the jobsite.

Non-WCS employees were responsible for unloading the tendons at the jobsite. All placement, installation and stressing of the tendons at the jobsite was performed by non-WCS employees, either personnel employed by the general contractor or a placing subcontractor. WCS conferred with the placing subcontractor and general contractor and inspected and approved the placement. WCS inspected the use of its stressing equipment by the placing subcontractor and consulted with the placing subcontractor whenever a problem in installation or stressing occurred. WCS was responsible for its work, materials, and equipment. If for any reason the required force was not produced, WCS corrected the

problem. If the fault was that of WCS then WCS was liable and paid for the corrective work. It, however, was not liable for the work of the placing subcontractors in the installation of the tendons nor of the work performed by the concrete pouring subcontractors; if the latter subcontractors were at fault, they were responsible for payment of the corrective work undertaken by WCS.

It is Board's position that under the Sales and Use Tax Law, the steel tendons constitute tangible personal property and a sales tax was applicable to the transactions (Rev. & Tax. Code, § 6051.) WCS, however, argues that it was a "consumer of materials used by them in fulfilling construction contracts," and therefore exempt from the tax by reason of section 1521.[1]

WCS enters into two kinds of post-tensioning contracts. Under the first contract, it is obligated to calculate the quantity of tendons, fabricate them, determine the stress to be applied to furnish the required "force" and to install and stress the tendons either by its own employees or by its own subcontractors at the job site. As to these contracts, Board agrees that WCS is a "consumer" under section 1521 and is exempt from sales tax on these transactions. ■ In the second type of contract, WCS performs the same service except that installation stressing is performed by the general contractor or a subcontractor of the general contractor. Board's position is that the actual installation of the tendons must be performed by WCS in order for it to qualify as a "consumer." The trial court was unimpressed by this argument. We also conclude that the distinction between the two contracts as urged by Board is superficial when WCS's responsibilities under both are fully understood. On the contracts in question, WCS performed a substantial portion of the work of construction, and it was obligated and did perform services which

---

[1]For sales and use transactions specifically involving the construction industry, the Board promulgated section 1521 that characterizes certain contracts for the improvement of real property as service transactions exempt from tax.

The pertinent provisions of section 1521, subdivision (a)(2), and subdivision (b)(1), provided in 1974 as follows (later amended in 1976):

"The term 'construction contract' as used herein means a contract for erecting, remodeling, or repairing a building or other structures on land and includes lump-sum, cost-plus, and time-and-material contracts. The term 'construction contract' does not include a contract for the sale and installation of machinery or equipment." (Subd. (a)(2).)

"Contractors are the consumers of materials used by them in fulfilling construction contracts and the tax applies to the sale of such materials to the contractors." (Subd. (b)(1).)

continued throughout all building phases, ending only with the final acceptance of the structure. ■ (See fn. 2.) The incorporation and proper stressing of the tendons were substantial[2] parts of the improvement to real property in that they were important and material to the very structural existence of the building throughout its lifetime. ■ There was evidence that WCS was contractually responsible and directly provided all supervision and testing in the installation of the tendons and was required to make necessary corrections in the installed tendons, whenever there was a force failure. Only WCS had the required expertise. The findings detail the work performed by WCS and the record supports the findings.[3] Board belittles many of these activities, implying they were performed for WCS's own benefit. This interpretation is, however, contradicted by several findings, particularly No. 30, to the effect that "whenever a problem develops due to an inadequate force, Plaintiff [WCS] is through contract interpretation, custom and practice called upon to make corrections regardless of who is at fault...." The fact that the financial burden of such repair falls on the

---

[2]The term "substantial," when referring to work furnished in building construction, means "important" or "material." (*George F. Kennedy, Inc.* v. *Miles & Sons Constr. Division,* 5 Cal.App.3d 516, 520 [85 Cal.Rptr. 298].)

[3]Some of the court's pertinent findings of fact are:

"20. Plaintiff consults with the structural engineers,. city building inspectors and the general contractor to eliminate possible structural problems in the application of the necessary force including the installation and stressing of the tendons.

"22. On some of the transactions Plaintiff constructs tendons on the job site while on others it constructs tendons at its facility.

"23. After Plaintiff delivers the tendons to the job site or after it completes construction of the tendons at the job site, it furnishes the stressing equipment to be used by employees employed by a placing subcontractor or the general contractor. On all of the transactions, Plaintiff's representative inspects and supervises the use of the stressing equipment and consults with the foreman of the placing contractor's or general contractor's employees whenever a problem in installation or stressing arises.

"24. The tendons are stressed and installed by personnel employed by the general contractor or by a placing and stressing subcontractor (a placer) under the supervision of the Plaintiff.

"27. Placing contractors who place and stress in the transactions are not sophisticated and their construction services are supervised on the job site by Plaintiff.

"28. It is Plaintiff's responsibility to produce the required force in the transactions.

"29. A force is not tangible personal property.

"30. In the transactions, whenever a problem develops due to an inadequate force, Plaintiff is through contract interpretation, custom and practice called upon to make corrections regardless of who is at fault. The contractor who caused the problem bears the financial burden of such repair after Plaintiff makes repair.

"31. In the transactions Plaintiff's tendons are incidental to the responsibility of Plaintiff to produce the force.

"32. Plaintiff is responsible for its work materials and equipment until final acceptance by the owner."

"contractor who caused the problem" does not negate the fact that WCS's contractual services in connection with the installation of the tendons were pervasive. The totality of the picture evoked by the court's findings is that all employees of the general contractor—including supervising personnel—labored under the expert direction of WCS's representative on the job site.

The trial court further bolstered its judgment by concluding that WCS's principal obligation under the contract was to supply a post tensioning force (a service); therefore, it was not a seller of tangible personal property. It is not necessary to determine the materiality of this finding because the judgment is affirmed for the reasons previously stated.[4]

We have carefully considered the cases relied upon by Board; namely, *Select Base Materials* v. *Board of Equal.,* 51 Cal.2d 640 [335 P.2d 672]; *Overly Mfg. Co.* v. *State Board of Equal.,* 191 Cal.App.2d 20 [12 Cal.Rptr. 391]; *Greenblatt* v. *State Bd. of Equalization,* 148 Cal.App.2d 619 [307 P.2d 379], and others. They are easily distinguishable and do not mandate a different result.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied February 25, 1977.

---

[4]It is obvious that the sales tax cannot be avoided by substituting the need which the goods fulfill, for the goods themselves: e.g., appearance for clothing, or warmth for heaters. Perhaps the force for tendons substitution is different, as respondent argues. As noted, however, we need not decide that point.