[No. F033234. Fifth Dist. May 30, 2001.]

RICHARD BOYD INDUSTRIES, INC., Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

707

COUNSEL

Lester J. Gendron and Dean Gordon for Plaintiff and Appellant.

Tritt & Tritt and James F. Tritt for McHale Sign Company et al. as Amici Curiae on behalf of Plaintiff and Appellant.

Bill Lockyer, Attorney General, Lawrence K. Keethe and Robert D. Milam, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

WISEMAN, J.—This case involves the differing tax consequences between a contractor's consumption of "materials" and its sale of "fixtures" as defined in section 1521 of the Board of Equalization's (Board) Sales and Use Tax Regulations (Cal. Code Regs., tit. 18, § 1521; hereafter Regulation 1521). Richard Boyd Industries, Inc. (Boyd) manufactures and installs various kinds of signs on real property. During the audit period in question, Boyd purchased all its supplies free of tax for resale and issued valid resale certificates to its suppliers. However, Boyd did not report sales tax on the sales of the fixtures that it installed. Boyd concedes the deficiency assigned by the auditor on its consumption of materials but disputes the portion of the deficiency assigned to its sales of fixtures. We reject Boyd's attempt to redefine the term "fixtures" in Regulation 1521 to mean personal property that is not permanently attached to real property.

### PROCEDURAL AND FACTUAL HISTORIES

On March 31, 1997, Boyd filed a first amended complaint for refund of sales and use tax and declaratory relief. The complaint also included Commercial Neon, Inc., as a party plaintiff. The gist of the action for refund is that the Board misapplied Regulation 1521 in calculating Boyd's tax liability, and the declaratory relief action requested a declaration that Regulation 1521 is void. The Board filed a demurrer to the complaint, which was sustained on the ground the claims of the two plaintiffs were improperly joined. The court made an order severing trial for the plaintiffs because the amendment to the complaint did not cure the defect caused by the improper joinder.

During a bench trial the parties entered a joint stipulation of facts for trial, as follows:

"1. Plaintiff [BOYD] is a licensed construction contractor holding contractor's license in the classification of C45 for the installation of signs on real property as classified by the Contractor's State Licenses Board, a division of the State of California Department of Consumer Affairs.

"2. BOYD was audited for the period October 1, 1989 through September 30, 1992 and this audit resulted in a tax liability of $64,208.11 plus interest of $25,658.49. A Notice of Determination for this liability was issued on January 30, 1996.

"3. In making its determination of underpaid taxes auditors in the employ of the [BOARD] selected 25 contracts as representative of all other construction contracts performed by BOYD during a three year period under review in the audit procedure. Such a practice is described as test and projection. Because the contracts are representative, the percentage of error as developed is applied to all similar transactions in the three year period.

"4. BOYD filed a Petition for Redetermination, postmarked March 27, 1995. The filing was not timely under Revenue and Taxation Code. The BOARD applied a 10% finality penalty of $6,420.81.

"5. The audit liability was satisfied in full with BOYD's payment effective November 21, 1995.

"6. BOYD's construction activity consists of performing construction contracts for the installation of informational and directional signage.

"7. In the performance of the signage contracts by BOYD, some of the signage is prepared in the fabricating facility so as to meet the requirement of the contract plans and specification. The prepared signage is installed.

"8. In this proceeding, the Claim for Refund is limited to the recover[y] of Sales and [U]se Taxes paid pursuant to the determination as noted above on the measure of $754,688.00 which is otherwise described as a sale of 'FIXTURES' under lump sum contracts not reported.

"9. An Appeals Conference in this matter was held on November 19, 1996. Pursuant to a Decision and Recommendation issued dated March 17, 1997 by appeals attorney Randy M. Ferris, a revision to the audit was made. As a result of that revision the defendant has refunded to plaintiff an amount of sales tax. The amount of tax measure remaining in controversy has been reduced to $667,035.00.

"10. Plaintiff in the first cause of action of its complaint is requesting judgment to recover all amounts determined as tax, interest, and penalty in excess of the tax on the material content on installations described as 'FIXTURES' in the manner calculated by defendant on audit schedule R12A-2 and defendant BOARD's Notice of Partial Denial of Claim for Refund, dated

June 3, 1997, which discloses the gross amount of 'FIXTURE' installations of $667,035.00.

"11. The parties agree that all of the tangible personal property on which a tax overpayment is claimed was affixed to real property by plaintiff pursuant to a construction contract for the improvement to real property."

In addition to the stipulated facts, Boyd testified at trial that he had been in the contracting business for over 20 years, doing signage since 1978. Every construction contract Boyd has involves placing signs that are permanently affixed to buildings. Boyd owns the signs up until the point he installs them. Once installed, Boyd receives lien rights, but he does not have the right to remove the signs. The intent of the parties to the construction contracts is that the signs that Boyd installs become a part of the real property.

Joseph Franklin Jaggard, Jr., testified he had been employed as a tax auditor with the Board for approximately six years. He did not perform the audit in question, but reviewed it. Upon his review, Jaggard found a mistake in the audit because one job involved the federal government as a customer. In that situation Boyd is to be considered a consumer, not a retailer, of the signs. The United States is exempt from bearing the burden of state taxes. He testified the intent of the parties is irrelevant for purposes of determining tax liability. Jaggard explained that installation labor of a sign is exempt, but the fabrication labor is taxable. Therefore, in reviewing the audit, he looked to see whether a sign was fabricated into the site or whether the sign was prefabricated, either at the job site or in the shop, and simply installed or attached at the site, in determining whether a tax was due. If the sign was prefabricated and then installed, it is considered a fixture. If the sign is manufactured into the structure or real property, it is considered a material. Jaggard explained that certain signs, such as monument signs, could constitute both materials and fixtures for purposes of tax consequences. The material used to construct the monument would be considered "material," while a plate or sign attached to the monument would be considered a "fixture." The basis for this determination is the plate or sign is removable without damaging or destroying the monument and because the plate or sign does not lose its identity when it is installed.

Evan D. Oliver testified he had been in the construction and contracting business since the early 1930's, and had testified as an expert witness in the superior and federal courts. The subject matter of his expert testimony in those courts was not revealed. Further, although Boyd asserts in his opening

brief that Oliver "is qualified as an expert in the construction field with a substantial experience in the anal[]ysis of sales and use tax liability of construction contractors," no testimony was elicited regarding Oliver's expertise in sales and use tax law. Oliver was never offered, nor was he expressly accepted by the court, as an expert on any given subject matter. Unlike Jaggard, who was designated as an expert witness by the Board, the record fails to show Oliver was designated as an expert witness by Boyd.

Oliver testified to his opinion on the definitions of several terms contained in Regulation 1521, such as the terms "fixtures," "accessory," and "component." "[A] fixture is normally considered in the regulation as stated as an accessory to the structure." Oliver testified none of Boyd's signs "were accessory to the structure. They were all incorporated in the structure." "And 'materials' are defined as components or construction materials or other personal property that's installed by the contractor that becomes part of the realty. And so I have to assume that an accessory is the opposite of a material." He testified Boyd's signs were "all improvements to realty." "[T]hese are all materials because they become components of the realty." "A fixture is not an improvement to realty." "[T]here's no reason why the[] signs should not be classified as materials, because they are components of the structure and they are other personal property that's installed." Except to opine that the term "accessory" "means something that is not a material," Oliver gave a conflicting definition for that term. "Its something that is not attached to the realty. . . . As long as its attached it's an accessory, never part of the realty." Oliver's final attempt at defining fixtures and accessories was as follows:

"A. The only example of a fixture as defined in the Board's regulation would be—an item not attached to the realty.

"Q. And why is that?

"A. Well, that's what—what it says, has to be accessory to the realty.

"Q. And what does 'accessory' mean, then?

"A. As far as I'm concerned, 'accessory' is something that's not a part of what we're looking at, it's accessory to the realty.

"If it doesn't have the words on the back of it—it has to remain an accessory as long as it's affixed or attached. It says 'installed' in the regulation. Doesn't say 'affixed.'

"If it doesn't have the words on the back of it—I might say that it could become a part of the realty. But the regulation specifically states that the fixture retains its identity as an accessory as long as it's in the area.

"Q. So the word 'accessory' means to you that it is not attached, is that—

"A. Not incorporated.

"Q. Not incorporated.

"MR. MILAM: No further questions.

"MR. GENDRON: No further questions.

"THE COURT: Very well, the witness is excused."

After posttrial briefing, the court found in favor of the Board, and denied Boyd the relief requested.

## DISCUSSION

■ Due to the parties' stipulation to the essential facts, any attack on the court's judgment must be deemed to present a question of law upon which we exercise an independent review. ■ In this respect, the issue before the court was whether the Board erroneously applied Regulation 1521 in determining Boyd's tax liability. The pertinent sections of Regulation 1521 provide:

"(a) DEFINITIONS. [¶] . . . [¶]

"(4) MATERIALS. 'Materials' means and includes construction materials and components, and other tangible personal property incorporated into, attached to, or affixed to, real property by contractors in the performance of a construction contract and which, when combined with other tangible personal property, loses its identity to become an integral and inseparable part of the real property. A list of typical items regarded as materials is set forth in Appendix A.

"(5) FIXTURES. 'Fixtures' means and includes items which are accessory to a building or other structure and do not lose their identity as accessories when installed. A list of typical items regarded as fixtures is set forth in Appendix B." Appendix B lists "Signs" as typical items regarded as fixtures.

■ The interpretation of a regulation is a question of law. (*Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593] (*Culligan*); accord, *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d

1031] ["Courts must . . . independently judge the text of a statute, taking account and respecting the agency's interpretation of its meaning"].) There are many rules of construction that provide guidance when the meaning of a regulation is uncertain. (See 7 Witkin, Summary of Cal. Law (9th ed. 1990) Constitutional Law, § 94, pp. 146-147 for a list of rules.) The primary rule, however, is to respect the subject matter expertise of the agency charged with enforcing the regulation and to defer to that agency's interpretation unless it is clearly erroneous or unauthorized. (*Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244]; *Lusardi Construction Co. v. California Occupational Safety & Health Appeals Bd.* (1991) 1 Cal.App.4th 639, 645 [2 Cal.Rptr.2d 297].) "Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court." (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 7.)

■■■ Boyd acknowledges that the issues to be considered are limited to the grounds stated in the claim for refund, and any contentions "intertwined with contentions expressly raised in the refund claim . . . ." (*Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 206 [105 Cal.Rptr.2d 407, 19 P.3d 1148].) In the claim for refund, Boyd disputed the Board's determination that in his construction contracts Boyd installed "fixtures" as defined in Regulation 1521. Boyd "contends that his activity as a construction contractor improving real property limited his liability for a sales tax as stated in Regulation 1521 which defines 'MATERIALS' . . . ." We limit our review to this legal issue, upon which the parties appear to agree. As a result, Boyd's contention that "The Business and Professions Code has preempted the field of construction contracts . . ." is not properly before us since it was neither raised in the refund claim nor intertwined with the contention made.

Although Oliver's testimony regarding how the sales and use tax should be applied was confusing and at times contradictory, it is clear his opinions are not supported in the law, and at best simply offer a difference of opinion with respect to the interpretation of Regulation 1521's language.

1. *Real property tax law is not controlling.*

In *Gen. Elec. Co. v. State Bd. of Equalization* (1952) 111 Cal.App.2d 180 [244 P.2d 427] (*General Electric*), the court agreed that the property installed by General Electric, a steam generator, became an improvement to real property and was taxable to the owner of the real property, Pacific. The court

nonetheless rejected the argument that General [Electric] was a consumer of the materials that went into the completed generator, and not a retailer of tangible personal property.

"However, the argument that, because the generator became taxable as real property in the hands of Pacific, the transaction by which title was transferred to Pacific by General [Electric] is conclusively determined to be not a sale, is unsound. The generator in place was clearly real property and taxable as such. But we are not interested in the nature of the property in the hands of the buyer, but in its nature in the hands of the seller—General [Electric]. The sales tax is imposed on the seller, not upon the buyer. Section 6006 of the Revenue and Taxation Code defines a sale as 'Any transfer of title . . . in any manner or any means whatsoever.' Clearly, title passed from General [Electric] to Pacific. In General [Electric's] hands the title it possessed was title to personal property. General [Electric] never had title as real property. What it had it passed to Pacific, and that was title to tangible personal property. That is all that is required by the act. This argument of appellants lacks substance." (*General Electric, supra,* 111 Cal.App.2d at p. 185.)

In accord with *General Electric,* the court in *King v. State Bd. of Equalization* (1972) 22 Cal.App.3d 1006 [99 Cal.Rptr. 802] rejected the contention that an interpretation of property tax law could be imported into the scheme of sales tax. (*Id.* at pp. 1011-1012.) The court explained: "Like many tax statutes, the sales tax law employs relatively artificial, relatively self-contained, concepts. If it utilizes popular meaning or concepts from other fields of law, it does so only by force of its own objectives and definitions. It does not define real property or 'improvements' to real property, if only because it makes little use of these terms. Its definition of tangible personal property deals with tangibility, not with distinctions between personalty and realty. To pursue the will-o'-the-wisp of definitions, concepts and distinctions from other areas of law—where they are shaped by purposes and by social and economic factors unrelated to sales taxation—leads to false goals. The coverage of the sales tax law is shaped by its own provisions and definitions and, where these are unclear, by applying its own perceived policies and concepts. [Citation.] [¶] . . . The courts have often declared that definitions evolved for property tax purposes have no necessary conformity with definitions for other purposes. [Citation.]" (*King v. State Bd. of Equalization, supra,* 22 Cal.App.3d at pp. 1010-1011, fns. omitted.)

To the extent Boyd attempts to import real property tax law into the determination of taxes owed on his construction contracts, the case law does not support him. (Accord, *United States Lines, Inc. v. State Bd. of Equalization* (1986) 182 Cal.App.3d 529, 536 [227 Cal.Rptr. 347] [while ordinarily

personal property affixed to the land of another belongs to the owner of the land and cannot be removed, for purposes of sales tax, the sale and installation of personal objects are subject to sales taxes even though affixed to the buyer's land].)

### 2. *Integration of the signs into the structure is not sufficient.*

In a suit for refund of taxes, the taxpayer bears the burden of proof. (*L.A.J., Inc. v. State Bd. of Equalization* (1974) 38 Cal.App.3d 549, 553 [113 Cal.Rptr. 319], disapproved on other grounds in *Culligan, supra,* 17 Cal.3d at p. 93, fn. 4.) "If there appears to be some reasonable basis for the board's classification a court will not substitute its judgment for that of the administrative body." (*L.A.J., Inc., supra,* 38 Cal.App.3d. at p. 554.)

As reported in *Coast Elevator Co. v. State Bd. of Equalization* (1975) 44 Cal.App.3d 576, 579, footnote 1 [118 Cal.Rptr. 818] (*Coast*), disapproved on other grounds in *Culligan, supra,* 17 Cal.3d at page 93, footnote 4, Evan D. Oliver offered the same opinion regarding integration into a structure versus accessory to the structure in a case involving elevators. Oliver's opinion was rejected over 26 years ago, and no changes in the law since then have operated to give his opinion any greater persuasive force today. In *Coast,* the court relied on *L.A.J, Inc.,* to find Oliver's testimony insufficient to overcome the taxpayer's burden of proof. ". . . Oliver merely established that reasonable minds might have reached a different result . . . . But evidence that reasonable minds might reasonably differ on the matter of classification of various components as materials or fixtures, falls far short of establishing that the classification adopted by Board was arbitrary, capricious or had no reasonable or rational basis." (*Coast, supra,* 44 Cal.App.3d at p. 586.) The court agreed with the *General Electric* case, "that the legal issue is not the status of the subject matter in the hands of the buyer but in the hands of the seller." (*Id.* at p. 588.) It held: "In the hands of the seller (Coast) the components of the elevator as a fixture were personal property. [¶] In the final analysis, what the Board was attempting to do (and properly so) was to *exclude* from gross sales those materials which were incorporated in and became a part of the real property and which were not properly classifiable as fixtures. Inasmuch as the contract provided for a single price, it became the duty of the Board to distinguish between and to properly classify real and personal property." (*Ibid.*)

The court in *Honeywell, Inc. v. State Bd. of Equalization* (1975) 48 Cal.App.3d 897 [122 Cal.Rptr. 237] was confronted with whether devices used in controlling air temperature and air conditioning manufactured and

installed by Honeywell were fixtures for tax purposes. (*Id.* at pp. 901-903.) "Stated in another form, the question is did Board have power to determine that some portion of the control devices were 'fixtures' and levy and collect tax on such 'fixtures' as fixtures rather than as materials incorporated in real property." (*Id.* at p. 903.) Honeywell claimed that its sales tax obligation should be measured by the acquisition cost to it of the materials that made up the components, i.e., that the Board should have disregarded all value added to the control devices by Honeywell's manufacturing process. The court could find no legal or factual basis for Honeywell's contention, and once again rejected it: "For over 40 years it has been the law of California that when the manufacturer of tangible personal property sells such property at retail, such sale is subject to sales tax even though such manufacturer may also install such tangible personal property in real property, when such tangible personal property may be properly classified as 'fixtures.' When a manufacturer of a fixture contracts to sell and install the fixture, the problem is not a legal problem of taxability, it is merely an accounting problem to determine what portion of the total contract price is attributable to the tangible personal property (fixture) and what portion is attributable to the labor and service of installing it. If a retail merchant sells a portable air conditioner which is clearly subject to sales tax, such sale does not become nontaxable merely because the merchant delivers it to his customer's home and 'plugs' it into the electric outlet to make certain that it operates. But Honeywell in effect argues that this analogy is not accurate because in the case at bar *all* of its 'control devices' became a part of the realty and were not 'fixtures.' Board and the trial court, based on substantial evidence, found otherwise. Honeywell did not carry its burden of proof in the trial court of proving that Board's action in breaking down the contract price was arbitrary, capricious, or had no reasonable or rational basis. [Citation.] What Honeywell is actually doing is questioning the validity of Board's basic approach of distinguishing between fixtures and materials which are incorporated in and become a permanent part of the real property and in segregating out of the total contract price the value of labor and services in installing the fixtures and material. Honeywell contends that that basic concept of distinguishing between fixtures and materials is invalid and that *Gen. Elec. Co.* v. *State Bd. of Equalization,* [*supra,*] 111 Cal.App.2d 180 . . . . , is outmoded and no longer good law. Honeywell's contention was decided adversely to it in *Coast Elevator Co.* v. *State Bd. of Equalization,* [*supra,*] 44 Cal.App.3d 576 . . . . The court there held that Board's regulation 1521 was valid. Honeywell's attack on Board's regulation 1521 adds nothing (except for the points raised in its closing brief) to the attack of *Coast Elevator* on the same regulation. The regulation was upheld in *Coast Elevator* and its predecessor was upheld in *Gen. Elec. Co.* v. *State Bd., etc.,*

*supra.* For the same reasons, it is upheld here. . . ." (*Honeywell, Inc. v. State Bd. of Equalization, supra,* 48 Cal.App.3d at pp. 904-905, fn. omitted.)

Although Boyd and amicus curiae urge us to reexamine the continuing validity of these cases, they provide no persuasive reasons for doing so and we decline the invitation. Boyd's reliance on *Western Concrete Structures, Inc. v. State Bd. of Equalization* (1977) 66 Cal.App.3d 543 [136 Cal.Rptr. 93], is unavailing. There the court applied the rules discussed above to distinguish between materials and fixtures. The supplies provided were steel strand, end anchorage hardware and sheathing, which were apparently incorporated into concrete, as "necessary to provide the specified force, allowing for friction and loss of force over the useful life of the structure." (*Id.* at p. 545.) Nothing in the opinion indicates that, after the supplies were incorporated into the structure, they were accessory to the structure. Nor is there any indication the supplies maintained their identity after they were incorporated into the structure and became an integral and inseparable part of the structure.

Boyd's reliance on *Overly Mfg. Co. v. State Bd. of Equal.* (1961) 191 Cal.App.2d 20 [12 Cal.Rptr. 391], is equally unavailing. Overly installed doors, but merely sold door and window frames to the contractor. The court distinguished between the doors and the frames, noting the frames were simply sold and not incorporated into the structure by Overly.

"[T]he fact tangible personal property is supplied for the purpose of being incorporated into a structure is not sufficient to classify the supplier as a construction contractor or as a consumer of the materials. He must actually engage in the service of incorporating them into the structure, and the service must be more than merely incidentally performed to accomplish the sale. [Citation.] The fact that pursuant to the same contract he incorporates other materials into the structure is not sufficient reason for determining that he is a consumer of all the materials and taxable only on the basis of the price he paid for all the materials. To so hold would result in an unfair competitive advantage to such contractor inasmuch as other suppliers of that type of materials who do not engage in construction work would have to pay tax based on the gross amount received as payment for the materials from a purchaser." (*Overly Mfg. Co. v. State Bd. of Equal., supra,* 191 Cal.App.2d at p. 28.)

Here, the issue is not whether a door is a fixture; it is whether a *sign* is a fixture. For the reasons previously discussed, a sign may appropriately be classified as a fixture if it does not lose its identity as a sign when installed,

and it may be removed without damaging or destroying the structure to which it is attached. As explained by Jaggard, "[r]emoval of [a] door destroys the ability to seal the structure." The removal of a door changes the integrity and "usefulness of the structure in that it can no longer be sealed, which is what the door is for."

### 3. Accepted legal definitions of the terms "fixture" and "accessory"

In addition to the confusing, and at times contradictory, definitions provided by Evan D. Oliver, it is unclear in what way Oliver was qualified to render expert legal opinions on the definition of words in a regulation. As noted at the outset, this is a task generally reserved to the judiciary and the agency charged with enforcing the regulation. The court in *People v. Church* (1943) 57 Cal.App.2d Supp. 1032, 1041 [136 P.2d 139], gave the legal definition of "fixture" as: " 'Anything of an accessory character annexed to houses and lands, so as to legally constitute a part thereof;—often called an *immovable fixture*. The law on the subject of *fixtures* varies with different subjects and in different jurisdictions. In general, however, a chattel will become a *fixture* if it is annexed in a manner relatively permanent and is of such a nature as to be suitable for use as part of the land to which it is annexed.' "

Under this definition, and given the unbroken line of cases beginning with *General Electric*, the Board's characterization of the signs Boyd permanently affixed or attached to realty, structures or buildings as "fixtures" for purposes of sales tax law was not arbitrary, capricious, unreasonable or irrational. Therefore, the court did not err by denying Boyd's suit for a tax refund.

### DISPOSITION

The judgment is affirmed. Costs are awarded to the Board.

Vartabedian, Acting P. J., and Levy, J., concurred.

Petitions for a rehearing were denied June 28, 2001, and appellant's petition for review by the Supreme Court was denied September 19, 2001. Chin, J., did not participate therein.